IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TERRY LEE WALTMAN ,                )
                                   )
              Petitioner,          )
                                   )
                                   )        CIV-05-953-W
v.                                 )
                                   )
JUSTIN JONES, Director, [1]        )
                                   )
              Respondent.          )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254.   Petitioner is challenging the convictions for

Manufacturing a Controlled Dangerous Substance (methamphetamine) and Conspiracy to

Manufacture a Controlled Dangerous Substance, both after former conviction of two or more

felonies, entered against him in the District Court of Logan County, Case No. CF-2000-370.

Respondent has responded to the Petition and filed the relevant state court records, including

a copy of a partial transcript of the preliminary hearing, a transcript of the motion to suppress

hearing, and the trial transcript (hereinafter TR___). The matter has been referred to the

undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

---

[1]The state officer having custody of the applicant is the properly-named respondent in a
federal habeas action.  Rule 2, Rules Governing Section 2254 Cases in the United States District
Courts.  Since the filing of this action, Justin Jones has been appointed as the Director of the
Oklahoma Department of Corrections ("DOC").  Thus, Justin Jones, the new Director of DOC,
has been substituted as the Respondent.  Fed. R. Civ. P. 25(d)(1).

For the following reasons, it is recommended that the Petition be DENIED.

I. Background

As a result of two searches conducted on a trailer house and surrounding property in Logan County, Oklahoma, on December 20 and 21, 2000, by local law enforcement officers, one of which was conducted without a warrant and one of which was conducted later after the officers obtained a search warrant, Petitioner and eight other defendants were charged with committing numerous drug-related offenses in the District Court of Logan County, including charges of manufacturing methamphetamine and conspiracy to manufacture methamphetamine.  All of the defendants in these cases filed motions to suppress the evidence obtained as a result of the property searches.  In pre-trial proceedings,  the trial court ruled that "the [search] warrant was based on an illegal search" and that the defendant who owned the residence, Edwin Mitts, and one other defendant, Larry Thomas, had a legitimate expectation of privacy in the residence such that their motions to suppress were sustained and the charges related to manufacturing methamphetamine filed against them were dismissed.  TR May 29, 2001, at 5-6; TR October 24, 2001, at 70-71.

With respect to Petitioner, the court ruled on May 29, 2001, at the conclusion of the preliminary hearing that Petitioner had failed to establish he had a legitimate expectation of privacy or property interest in the area searched, that the search warrant was not directed at Petitioner, and that Petitioner had no standing to challenge the legality of the search or the search warrant. TR May 29, 2001, at 3-4.  In support of this ruling, the presiding judge stated that Petitioner "was wearing winter clothing and the indication would be from circumstantial

evidence that he wasn't there for the long haul.  He was just a drop-in visitor." TR May 29,

2001, at 7. Based on these findings, the court overruled Petitioner's motion to suppress the

evidence obtained as a result of the search and bound Petitioner over for trial on two counts

of the information charging him with manufacturing methamphetamine and conspiracy to

manufacture methamphetamine.  However, regarding two other counts filed against Petitioner

charging him with trafficking and unlawful possession of a firearm, the court found the

evidence did not establish probable cause Petitioner committed the crimes. TR May 29, 2001,

at 4.

Petitioner and the other remaining defendants filed motions to suppress the evidence

obtained in the searches of Mr. Mitts' residence, and following a hearing on the motions the

trial court ruled that Petitioner and the remaining defendants did not have a reasonable

expectation of privacy in the property that was searched because they did not demonstrate

legal custody or control over the property, *e.g.*, that they were guests who were going to be

on the premises overnight. TR October 24, 2001, at 70.   Accordingly, Petitioner's motion to

suppress was overruled, and Petitioner proceeded to trial.

A jury trial was conducted concerning the charges filed against Petitioner of

manufacturing methamphetamine and conspiracy to manufacture methamphetamine, at which

Petitioner testified in his defense and evidence was admitted concerning Petitioner's prior

felony convictions.  At the conclusion of the three-day trial conducted on December 17, 18,

and 19, 2001, the jury found Petitioner guilty of having committed both offenses after former

conviction of two or more felonies and recommended that Petitioner be sentenced to forty-

year terms of imprisonment for each conviction, to be served consecutively, and Petitioner was sentenced accordingly. TR vol. IV, December 19, 2001, at 63-69.

Petitioner appealed the convictions and asserted in his brief on appeal that the search warrant was defective and that the evidence presented against him at trial obtained as a result of the searches of Mr. Mitts' residence should have been suppressed.  Petitioner further asserted that insufficient evidence was presented at trial to support the convictions and that the trial court erred in admitting evidence of another crime which was remote in time to the crimes for which he was convicted.  Response, Ex. 1 (Waltman v. State, No. F-2001-1522, Brief of Appellant).  The State of Oklahoma responded that Petitioner lacked standing to challenge the validity of the searches or the search warrant or, in the alternative, that the search warrant was not defective, that there was sufficient evidence presented at Petitioner's trial to support the convictions, and that the evidence admitted at trial of Petitioner's actions one week before the offenses was properly admitted although the alleged error was not properly preserved for appellate review. Response, Ex. 2 (Waltman v. State, No. F-2001-1522, Brief of Appellee).   In a summary opinion issued March 13, 2003, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the convictions and sentences entered against Petitioner in Case No. CF-2000-370. Response, Ex. 3 (Waltman v. State, No. F-2001-1522 (Okla. Crim. App. Mar. 13, 2003)(unpublished summary op.)).   With respect to Petitioner's first proposition, the OCCA found that Petitioner did not have standing to object to the search as he failed to prove he had a legitimate expectation of privacy in the trailer or surrounding

property as an overnight guest. Id., at 1-2.[2]  With respect to Petitioner's second proposition, the OCCA found that "after viewing the evidence in the light most favorable to the State and accepting all reasonable inferences and credibility choices that tend to support the jury's verdict, any rational trier of fact could have found the essential elements of both crimes beyond a reasonable doubt." Id., at 2 (citing Spuehler v. State, 709 P.2d 202, 203-204 (Okla. Crim. App. 1995)).  The OCCA also found no error occurred with respect to Petitioner's third ground for relief. Id.

The OCCA denied Petitioner's request for rehearing. Response, Ex. 4.  Petitioner subsequently filed an application for post-conviction relief in the trial court.  Petitioner contended in this application that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the issue that invalid judgments and sentences were introduced by the prosecutor at his trial and used for impeachment, because appellate counsel failed to raise an issue on appeal of ineffective assistance of trial counsel based on trial counsel's failure to object to the introduction of the invalid judgments and sentences and for failing to move for a mistrial after this extremely prejudicial evidence was admitted against Petitioner, and because appellate counsel failed to raise an issue regarding the admission into evidence and impeachment use of "stale" prior convictions during the trial.  Petitioner raised a separate claim in the application of ineffective assistance of trial counsel based on trial counsel's failure to object when the "invalid" convictions were presented to the jury to

---

[2]In its decision, the OCCA did not differentiate between the initial warrantless search and the subsequent search of Mr. Mitts' residence conducted pursuant to a search warrant.

impeach Petitioner, for failure to move for a mistrial as a result of the admission of this prejudicial evidence, and for failure to investigate these convictions "which were more then [sic] ten years old." Response, Ex. 5. Finally, Petitioner contended that the trial court erred in allowing the prosecutor to use Petitioner's prior convictions which were over ten years old for impeachment purposes, erred in allowing the prior convictions to be admitted into evidence, and further that the prosecutor acted improperly in failing to verify the validity of the prior convictions. Response, Ex. 5. The trial court denied the post-conviction application, finding that all of the claims except Petitioner's claim of ineffective assistance of appellate counsel were procedurally barred as a result of Petitioner's failure to raise the claims in his direct appeal. With respect to Petitioner's claim of ineffective assistance of appellate counsel, the trial court found that petitioner's appellate counsel "is capable, competent and experience[d] in criminal law and acted as a reasonably competent attorney under the facts and circumstances of this case." Response, Ex. 5.

Petitioner appealed the post-conviction decision. Response, Ex. 5. In an Order Affirming Denial of Post-Conviction Relief entered by the OCCA on December 23, 2004, the OCCA affirmed the trial court's denial of Petitioner's post-conviction application. Response, Ex. 7 (Waltman v. State, No. PC-2004-1069 (Okla. Crim. App. Dec. 23, 2004)(unpublished op.)). It is not clear, however, whether the OCCA based its decision on Petitioner's procedural default or whether the court simply rejected the Petitioner's underlying claim of error in the admission of invalid judgments and sentences to impeach his testimony and enhance his sentence. Nowhere in the appellate court's decision does the OCCA indicate that

it is addressing Petitioner's ineffective assistance of trial or appellate counsel claims. The OCCA explicitly addresses only Petitioner's underlying claim of trial error. However, the OCCA ultimately finds that Petitioner failed to show prejudice from the introduction of the invalid judgments and sentences, and a showing of prejudice is required to demonstrate constitutionally ineffective assistance of counsel under the prevailing Supreme Court standard.

Petitioner now seeks habeas relief concerning his convictions in Case No. CF-2000-370. In ground one of the Petition, Petitioner asserts that he had standing to challenge the validity of the search warrant and because the searches were ruled illegal by the trial court the evidence presented against him at trial obtained as a result of the searches should have been suppressed. In support of this ground, Petitioner contends that he "was an overnight guest standing in the kitchen with no dominion or contraal [sic] of anything...." Petition, at 5.

In ground two of the Petition, Petitioner contends that the evidence presented at his trial was insufficient to support his convictions. In support of this contention, Petitioner states that "[t]here was no agreement between myself and anyone else to commit any crime [and] no evidence of any crime [was] found in my possession." Petition, at 6. In his third ground for habeas relief, Petitioner contends that he was prejudiced by the admission of evidence during his trial "of another crime which was remote in time." Petition, at 8. Petitioner raised these three issues in his direct appeal, and he has therefore exhausted state court remedies concerning these claims.

In ground four, Petitioner alleges that "[p]rior convictions were used for impeachment and enhancement that were invalid and destroyed my right to a fair trial." Petition, at 9.

Petitioner refers to prior convictions "dated July 12, 1985" in Case Numbers CF-85-164, CF-85-152, and CF-84-152.  Petitioner concedes that he failed to raise this claim in his direct appeal and alleges that appellate counsel provided constitutionally ineffective assistance of counsel by failing to assert this claim in the direct appeal.  Petitioner presented both the ineffective assistance of appellate counsel claim and the underlying claim of improper admission of evidence in his post-conviction application, which was denied.  The OCCA clearly rejected Petitioner's  claim of error in the admission of evidence of prior convictions on its merits.  Because the OCCA did not clearly and expressly base its decision on an adequate and independent procedural ground, there is no procedural bar to this Court's review of the Petitioner's claim of evidentiary error asserted in ground four. See Harris v. Reed, 489 U.S. 255, 262 (1989)("[A] federal claimant's procedural default precludes federal habeas review ... only if the last state court rendering a judgment in the case rests its judgment on the procedural default."). Therefore, Petitioner has exhausted state court remedies concerning the claim raised in ground four.

II. Standard of Review

Because the OCCA reached the merits of and rejected each of the claims Petitioner raises in his Petition, habeas relief may be awarded only if the OCCA's adjudication of the same claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254 (d).  This standard, which was

adopted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), directs the focus of judicial review to the state appellate court's decision. <u>Matteo v. Superintendent</u>, 171 F.3d 877, 885 (3d Cir.), <u>cert. denied sub nom.</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999). Under this standard, federal courts reviewing habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H.R.Conf.Rep.No. 104-518, p. 111 (1996)). A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided an issue differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Id.</u> at 405-406. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Id.</u> (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)(*per curiam*)). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." <u>Brown v. Payton</u>, __ U.S. ____, 125 S.Ct. 1432, 1439 (2005); <u>Williams</u>, 529 U.S. at 407. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the

Supreme Court case] to the facts of his case in an objectively unreasonable manner," not

merely that the state court decision applied the Supreme Court case incorrectly. Woodford v.

Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).  "[W]hether a state court's decision was

unreasonable must be assessed in light of the record the [state appellate] court had before it."

Holland v. Jackson,  542 U.S. 649, 124 S.Ct. 2736, 2737-2738 (2004)(*per curiam*)(citations

omitted).   The AEDPA also mandates that factual findings made by a state trial or appellate

court are presumptively correct and may be rebutted only by "clear and convincing evidence."

28 U.S.C. § 2254(e)(1).

 III.   Fourth Amendment Violation

        In ground one, Petitioner asserts that he is entitled to habeas relief because his

convictions were based on evidence seized during searches that violated his rights under the

Fourth Amendment. The record shows that at Petitioner's preliminary hearing he asserted that

he had standing to challenge the searches conducted on December 20 and 21, 2000.

Additionally, prior to Petitioner's trial a hearing on a motion to suppress was conducted in the

trial court, at which Petitioner asserted that he had standing to challenge the validity of the

search and the search warrant employed during the searches.  The trial court had previously

suppressed the evidence obtained as a result of the same searches and dismissed the criminal

case filed against the owner of the residence that was searched and one of the defendants

charged with offenses stemming from the searches.

        In Stone v. Powell, 428 U.S. 46 (1976), the Supreme Court addressed the issue of

whether state prisoners may assert a violation of the Fourth Amendment with respect to seized

10

evidence in a federal habeas proceeding.  The Court reasoned that the purpose of the exclusionary rule was "to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it," and that this goal would not be enhanced "if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant." Powell, 428 U.S. at 492-493.  Further, the Supreme Court found that any benefit from allowing habeas review of a search-and-seizure claim would be outweighed by the costs to other values promoted by the criminal justice system. Id. at 493-494.  Thus, the Court concluded that where a state has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," a state prisoner may not obtain habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Id. at 494.

The "opportunity for full and fair consideration" portion of the Stone principle "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim." Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978).  "It also includes the full and fair evidentiary hearing contemplated by Townsend [ v. Sain, 372 U.S. 293 (1963)]. Additionally, the Stone standard contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." Id.

Considering all of the circumstances present herein, the record shows that Petitioner was given an opportunity for full and fair consideration of his motion to suppress the evidence of drugs and drug-making equipment that was admitted at Petitioner's trial.  Further, the

11

record shows that Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim in his direct appeal.   Petitioner contended in the trial court and on appeal that he had an expectation of privacy in Mr. Mitts' residence because he was an overnight guest.   See Katz v. United States, 389 U.S. 347, 353 (1967)(an individual may object to a search only if he or she has "a legitimate expectation of privacy in the invaded place").   In making its determination that Petitioner had no standing to challenge the validity of the search, the OCCA recognized and found distinguishable pertinent Supreme Court jurisprudence, citing Minnesota v. Olson, 495 U.S. 91, 98-99 (1990)(recognizing that overnight guests have a legitimate expective of privacy in their hosts' homes), and Minnesota v. Carter, 525 U.S. 83, 90-91 (1998)(individuals present in a home for a business transaction for a matter of hours are "simply permitted on the premises" and have no legitimate expectation of privacy entitled to Fourth Amendment protection).   Accordingly, under Stone, Petitioner is barred from relitigating his Fourth Amendment claim in ground one of the Petition in this habeas proceeding, and Petitioner is not entitled to habeas relief concerning this claim.

IV. Sufficiency of the Evidence

In his second ground for habeas relief, Petitioner contends there was insufficient evidence presented at his trial to support the convictions for manufacturing methamphetamine and conspiracy to manufacture methamphetamine.   Petitioner supports this allegation with only a cursory conclusion of lack of evidence of an agreement and possession.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or

12

innocence determination, but rather whether it made a rational decision to convict or acquit."
Herrera v. Collins, 506 U.S. 390, 402 (1993).  For habeas review, "the relevant question is
whether, after viewing the evidence in the light most favorable to the prosecution, any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013
(10th Cir. 1996)(quoting Jackson).  Both direct and circumstantial evidence is considered in
determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d
1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110 (1998).  In applying this standard, the
court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must
"'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'"
Messer, 74 F.3d at 1013 (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)).
 In rejecting the Petitioner's claims of insufficient evidence to support the convictions in his
direct appeal, the OCCA applied the appropriate Jackson  standard the court had previously
adopted in Spuehler v. State, 709 P.2d at 203.

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which
defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16.   Under
Oklahoma law, the elements of a conspiracy are (1) an agreement between two or more
persons to commit the crime charged and (2) an act by one or more of the parties in
furtherance of the conspiracy, or to effect its purpose. Okla. Stat. tit. 21, §§ 421 and 423; Pink
v. State, 104 P.3d 584, 594 (Okla. Crim. App. 2004).  Because of the inherently secretive
nature of a conspiracy, Oklahoma courts recognize that the existence of a conspiracy may be

proved by indirect proof and circumstantial evidence.  Pink, 104 P.3d at 595.  The elements of the offense of manufacturing a controlled dangerous substance are the knowing and intentional production, preparation, propagation, compounding, or processing of a controlled dangerous substance through extraction and synthesis and dominion and control over the substances. Vilandre v. State, 113 P.3d 893, 895 n. 1 (Okla. Crim. App. 2005); Okla. Stat. tit. 63, §2-401(G); Okla. Stat. tit. 63, §2-101 (22); White v. State, 900 P.2d 982, 986 (Okla. Crim. App. 1995)(joint possession may be proven by circumstantial evidence of dominion and control over the substance possessed and possession need not be exclusive as long as there is evidence of shared control over the substance).

Evidence presented at Petitioner's trial showed that law enforcement officers received a report of shots being fired from a house in Logan County, Oklahoma, and of suspicious activity and suspicious items on this property that might be involved in the making of methamphetamine.  Several officers converged on the trailer house that was the subject of the report about two hours later.  The officers observed several cars parked outside of the trailer house, and one individual attempted to exit the house.  The individual was stopped and searched, and a bag containing a white, powdery substance was discovered on his person. Petitioner was found inside the house, and Petitioner and the occupants of the house were detained. After receiving a report that the occupants of the trailer were walking behind the residence, law enforcement officers investigated and found an abandoned vehicle on which a liquid was bubbling on top of a piece of plywood placed on the hood of the vehicle.  Also, glassware and a container generally associated with the manufacturing of methamphetamine

were found inside the trailer house.  The nine occupants of the house were transported to the Logan County Sheriff's Office, a search warrant was obtained, and a search of the residence and property was conducted.  The search revealed that the coffee pot earlier observed on the abandoned vehicle on the property was hooked to a propane tank and that the coffee pot contained a mixture from which steam was rising.  The steam was described by one officer as having the distinctive odor of anhydrous ammonia, which was found inside a propane bottle located in the engine compartment of the abandoned vehicle and which is a chemical commonly used in the manufacture of methamphetamine.  The substance obtained from the coffee pot was field-tested, and this test showed the presence of methamphetamine.  Around the abandoned vehicle officers also found battery casings from which lithium strips had been removed and a container of fuel, both of which are used in the manufacture of methamphetamine.  In the kitchen of the trailer officers found more empty battery casings with the lithium strips removed, a blender, a white, powdery substance near the blender, one psuedoephedrine tablet, and four bottles with labels indicating they contained psuedoephedrine tablets, which are used in the manufacture of methamphetamine.  The powdery substance found in the kitchen near the blender was field-tested and tested positive for the presence of ephedrine, a substance used in the manufacture of methamphetamine.  In the laundry room of the trailer house officers discovered a box bearing a beer label and a large glass jar containing a liquid from which samples were obtained and sent for laboratory testing.

Petitioner's former girlfriend, Ms. Sauls, testified for the prosecution that she and Petitioner went to the trailer house owned by Mr. Mitts on the evening of December 20, 2000,

that she formerly used methamphetamine, that Petitioner supplied her with methamphetamine, that Petitioner introduced her to Mr. Mitts approximately one week  prior to her and Petitioner's arrest when she and Petitioner went to Mitts' residence to manufacture methamphetamine, that Petitioner took with them to the trailer house at that time a propane bottle containing anhydrous ammonia and other items used to manufacture methamphetamine, including glassware and funnels.  The witness testified that on December 20, 2000, she and Petitioner went to Mr. Mitts' trailer house and took with them a cardboard beer box containing bottles of psuedoephedrine, lithium batteries, and glassware she and Petitioner had previously purchased.  The witness testified that she and Petitioner had injected methamphetamine sometime on that day.  When she and Petitioner arrived at Mr. Mitts' trailer house on December 20, 2000, she testified that Petitioner took the cardboard beer box into Mr. Mitts' kitchen, put the cardboard beer box down on a kitchen counter, and began to break down psuedoephedrine tablets in a blender.  She testified that several other individuals were present, including Mr. Mitts, and that behind the trailer house was an old, abandoned vehicle on which the chemicals were mixed to manufacture methamphetamine.  The witness testified she and Petitioner went outside of the trailer house to the abandoned vehicle, where she observed Petitioner  pouring anhydrous ammonia into a bowl and stirring a mixture on top of the vehicle, and that the mixture "smelled awful" because of the anhydrous ammonia used in the cooking process. TR vol. II, Dec. 18, 2001, at 32-33.  The witness testified she held a flashlight while Petitioner carried out the methamphetamine cooking process and that she also observed Petitioner remove lithium strips from the batteries she and Petitioner had purchased

earlier.  The witness identified photographs taken by law enforcement officials at Mr. Mitts'
trailer house, including photographs of the abandoned vehicle, the bottle of anhydrous
ammonia found in the abandoned vehicle, and the beer box that she testified she and Petitioner
took to the house that evening.  The witness testified that Petitioner told her on the day of their
arrest that he had to make more methamphetamine, and she testified that Mr. Mitts was
expecting them when she and Petitioner arrived at Mr. Mitts' residence.  Evidence was
presented at the trial that methamphetamine was present in the sample taken by law
enforcement officials from the glass jar found in the laundry room of Mr. Mitts' trailer house.

Viewing the evidence in the light most favorable to the prosecution, there was more
than sufficient evidence presented at Petitioner's trial for a reasonable jury to have found him
guilty of the offenses of manufacturing methamphetamine and conspiracy to manufacture
methamphetamine.  There was evidence presented at the trial from which a reasonable jury
could find that Petitioner was an active participant in both gathering the ingredients for and
in the actual process of manufacturing methamphetamine at Mr. Mitts' residence, that Ms.
Sauls and possibly other individuals participated in the illegal manufacturing of
methamphetamine at the residence, that Petitioner had an agreement with at least Mr. Mitts
to manufacture methamphetamine, and that Petitioner was at least in joint possession of the
methamphetamine manufactured at Mr. Mitts' residence.  The OCCA's decision with respect
to this claim was not contrary to, or an unreasonable application of, the governing Jackson
standard, and the OCCA's decision was not based on an unreasonable determination of the
facts in light of the evidence presented at Petitioner's trial.

V. <u>Trial Court Error in Admission of Evidence of Another Crime</u>

In ground three of the Petition, Petitioner contends the trial court erred in allowing the admission of evidence of another crime that was "remote in time" to the crimes for which he was convicted.  Petitioner states that he is raising the same claim of improper admission of evidence presented in his direct appeal.   In his appeal, Petitioner asserted the following facts and argument in support of this claim of evidentiary error:

> Prior to trial, the State filed a Notice of Intent to Offer Evidence of Other Crimes. (O.R. 49-50).  In pertinent part, the Notice stated that the State planned to offer evidence ... "that the said defendant took anhydrous ammonia to Edwin Mitts' residence approximately two weeks prior to the 20th day of December 2000, in order to manufacture methamphetamine and in fact did so on that particular occasion."  (O.R. 49-50).   Whatever occurred two weeks prior to December 20, 2000, was irrelevant and should not have been admitted at trial.  Nevertheless, at trial, [prosecution witness] Sauls testified that she and [Petitioner] went to Mitt's [sic] trailer about one week prior to December 20th "to, I guess, cook dope." (Tr. II, 9).   She also testified that [Petitioner] took a propane bottle containing anhydrase [sic] ammonia with him to Mitts' residence. (Tr. II, 9).   This information had no bearing on whether [Petitioner] manufactured or conspired to manufacture methamphetamine on December 20, 2000. Instead, the evidence was extremely prejudicial and could have no other effect than to bias the jurors against [Petitioner].

Response, Ex. 1 (<u>Waltman v. State</u>, No. F-2001-1522, Brief of Appellant, at 16).

It is well established that state court rulings on the admissibility of evidence do not warrant habeas relief unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. <u>Hopkinson v. Shillinger</u>, 866 F.2d 1185, 1197 (10th Cir. 1989), <u>cert. denied</u>, 497 U.S. 1010 (1991).   <u>See</u> <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1277

(10th Cir. 1999)("On habeas review, we will not disturb evidentiary findings regarding the admission of prior offenses, crimes, or bad acts evidence unless the prejudice flowing from such evidence is so great as to constitute a denial of federal constitutional rights by rendering the trial fundamentally unfair."), cert. denied, 531 U.S. 833 (2000).

Petitioner testified at his trial that he was merely making an alcohol-based liqueur in Mr. Mitts' kitchen on the night he was arrested at Mr. Mitts' residence.  Petitioner denied that he was in possession of any methamphetamine, denied that he was a participant in the manufacture of methamphetamine, and denied that he had an agreement with anyone to manufacture methamphetamine.  Thus, the evidence presented through the testimony of the prosecution witness Ms. Sauls, who was Petitioner's former girlfriend, that Petitioner took a bottle of anhydrous ammonia to Mr. Mitts' residence approximately one week before the night of his arrest was highly relevant to the methamphetamine manufacturing charges.  This evidence was not so prejudicial as to render Petitioner's trial fundamentally unfair in contravention of the Due Process Clause of the Constitution.  The OCCA's decision in this regard was not contrary to, or an unreasonable application of, clearly-established law as determined by the Supreme Court, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.  Accordingly, Petitioner is not entitled to habeas relief as to this claim of evidentiary error.

VI. Error in Admission of Evidence of Vacated Judgments and Sentences in Prior Felony Convictions

In ground four of the Petition, Petitioner asserts that the trial court erred in admitting

19

into evidence, and allowing the prosecutor to impeach his testimony with, the judgments and sentences entered in three prior felony convictions which were "invalid" because the convictions had been vacated in post-conviction proceedings.  As factual support for this claim, Petitioner asserts that he testified during his trial that he "filed post-conviction relief and went back and they modified the convictions."  However, Petitioner contends that the prosecutor impeached his testimony by using documentary evidence from the three "void convictions" in the form of written judgments and sentences, and Petitioner also contends that the exhibits admitted into evidence to prove the existence of these three prior felony convictions were judgments and sentences that were "invalid" because he obtained post-conviction relief in these cases.  Petitioner admits, however, that he was subsequently convicted in those same cases but alleges that the convictions were for "different" offenses than those shown in the judgments and sentences admitted into evidence at his trial. Respondent contends that this claim is procedurally barred from habeas relief because it was not raised in Petitioner's direct appeal.[3]  However, Petitioner raised this same claim in his post-conviction application, and the OCCA reviewed the merits of the claim and rejected the claim without mentioning Petitioner's procedural default or his claims of ineffective assistance of trial and appellate counsel.  Therefore, no state court procedural bar precludes this Court's review of the merits of the same claim of evidentiary error.

---

[3]Curiously, within Respondent's procedural default argument Respondent inconsistently states that the OCCA "thoroughly addressed the petitioner's claim on the merits and found that the petitioner had failed to show any prejudicial error." Response, at 19.

The trial record shows that during the prosecutor's cross-examination of Petitioner, Petitioner denied having been convicted for selling drugs. TR vol. III, Dec. 18, 2001, at 61. Upon further questioning, Petitioner then admitted he had entered a guilty plea to a charge of possession of illegal drugs with intent to distribute. Id. Petitioner also admitted that he had three drug-related convictions for possession of illegal drugs, including two convictions for possessing marijuana and one conviction for possessing methamphetamine, and that he had previously been in prison. Id., at 62-63. During this cross-examination, the prosecutor handed Petitioner an exhibit identified as State's Exhibit No. 1, and Petitioner stated that in this case he had been convicted of possession of marijuana in 1993. Id., at 63-64. The prosecutor then handed Petitioner an exhibit identified as State's Exhibit No. 2, and Petitioner admitted that "maybe" he was convicted in Muskogee, Oklahoma, in 1985 in Case No. CF-85-164 of possession of a firearm after a felony conviction. Id., at 65-66. Petitioner later testified that this case was "dropped or dismissed." TR vol. IV, Dec. 19, 2001, at 4. The prosecutor handed Petitioner an exhibit identified as State's Exhibit No. 3. When asked what this exhibit showed Petitioner stated that the exhibit concerned another 1985 conviction in Case No. CRF-85-152 and admitted he was convicted in that case of possession of a controlled substance after former conviction of a felony. TR vol. III, Dec. 18, 2001, at 66. Petitioner testified he thought this conviction was for possession of methamphetamine. Id., at 67. The prosecutor then handed Petitioner an exhibit identified as State's Exhibit No. 4, and when asked what this exhibit showed Petitioner stated that in 1984 in Muskogee, Oklahoma, he was convicted of unlawful delivery of a controlled substance in that case. Id., at 67. Petitioner testified he went

to trial in that case and was convicted and sentenced to a two-year term of imprisonment. Id., at 68.  The prosecutor then handed Petitioner an exhibit identified as State's Exhibit No. 5, and Petitioner stated that in this case, Case No. CF-84-152, he entered a guilty plea and was convicted of unlawful delivery of a controlled dangerous substance after former conviction of a felony. Id., at 69-70.  Petitioner stated that in this case and "the other" case he was given post-conviction relief to the extent that "they modified the sentence." Id., at 70.

The State's exhibits presented to Petitioner during his cross-examination were admitted into evidence. TR vol. IV, Dec. 19, 2001, at 17-18.  State's Exhibit No. 1 was a judgment and sentence entered in the District Court of Oklahoma County on January 30, 1995, in State of Oklahoma v. Terry Lee Waltman, Case No. CF-93-1417, reflecting that Petitioner was convicted of possession of a controlled dangerous substance after a former felony conviction. Response, Ex. 9.  State's Exhibit No. 2 was a judgment and sentence on plea of nolo contendere entered in the District Court of Muskogee County on July 12, 1985, in State of Oklahoma v. Terry Lee Waltman, Case No. CRF-85-164, reflecting that Petitioner entered a nolo contendere plea to a charge of felonious possession of a firearm after former conviction of a felony and was sentenced to serve a ten-year term of imprisonment. Response, Ex. 9. State's Exhibit No. 3 was a judgment and sentence on plea of guilty entered in the District Court of Muskogee County on September 23, 1986, in State of Oklahoma v. Terry Lee Waltman, Case No. CRF-85-152, reflecting that Petitioner entered a guilty plea to two counts of unlawful possession of a controlled substance after former conviction of a felony and one count of knowingly concealing stolen property after former conviction of a felony and that he

22

was sentenced to serve three, ten-year concurrent terms of imprisonment for these convictions. Response, Ex. 9.  State's Exhibit No. 4 was a judgment and sentence on conviction entered in the District Court of Muskogee County on July 12, 1985, in State of Oklahoma v. Terry Lee Waltman, Case No. CRF-84-153, reflecting that Petitioner was convicted of unlawful delivery of a controlled drug and sentenced to serve a two-year term of imprisonment.  Response, Ex. 9.  State's Exhibit No. 5 was a judgment and sentence on plea of nolo contendere entered in the District Court of Muskogee County on July 12, 1985, in State of Oklahoma v. Terry Waltman, Case No. CRF-84-152, reflecting that Petitioner entered a nolo contendere plea to charges of unlawful delivery of a controlled drug after former conviction of a felony and weapon use in commission of crime after former felony conviction and was sentenced to serve concurrent 20-year terms of imprisonment on each conviction. Response, Ex. 9.

In Petitioner's post-conviction appeal, the OCCA rejected the Petitioner's claim of error in the admission of evidence of his prior felony convictions.  In its decision, the OCCA found that Petitioner presented in support of his post-conviction application an uncertified copy of the first page of an order entered on April 11, 1986, in Muskogee County District Court Case Nos. CRF-84-152, CRF-85-152, and CRF-85-164, and that this document reflected findings that Petitioner's guilty pleas in those three cases were not knowingly entered and that the convictions resulting from those pleas were therefore vacated.  Response, Ex. 7. However, the OCCA further found that in response to Petitioner's post-conviction application the State had acknowledged that the judgments and sentences entered against Petitioner in Case Nos. CRF-84-152, CRF-85-152, and CRF-85-164 were vacated in state district court on

April 11, 1986, but the State had presented evidence of new judgments and sentences entered in those cases showing that Petitioner subsequently entered pleas of guilty in the cases and on September 23, 1986, he was again convicted of felony offenses in each of those three cases. Response, Ex. 7, at 2.  The OCCA concluded that in his post-conviction appeal Petitioner had simply ignored the subsequent judgments and sentences entered in his prior felony convictions.  Further, the OCCA concluded that Petitioner had made "no effort to explain how he was prejudiced by any mistaken use at trial of the vacated Judgments and Sentences rather than use at trial of the valid Judgments and Sentences that apparently reflect convictions for the identical offenses shown in the previous Judgments and Sentences," and that he had consequently failed to prove any prejudicial error occurred during his trial.  Response, Ex. 7, at 2-3.

Because Petitioner's claim is based solely on a state court evidentiary ruling under state law, the state court ruling on the admissibility of this evidence does not warrant habeas relief unless it rendered Petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights. Hopkinson, 866 F.2d at 1197.

Petitioner's contention does not reflect errors so prejudicial that his trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Constitution.  In Oklahoma, a habitual offender's sentence may be enhanced by evidence of two or more prior felony convictions. Okla. Stat. tit. 22, § 51.1(B).  Considering the evidence presented at his trial, Petitioner had at least two prior felony convictions (in Case Nos. CF-93-1417 and Case No. CRF-84-153) other than the convictions he challenges as being based on "invalid"

documentary evidence of judgments and sentences. Response, Ex. 9 (State's Exhibit No. 1 and State's Exhibit No. 4). At trial, Petitioner admitted the existence of these two prior felony convictions. Moreover, the evidence admitted at Petitioner's trial to support his prior felony conviction in Case No. CRF-85-152 was the judgment and sentence, identified as State's Exhibit No. 3, entered on September 23, 1986, which is the date on which Petitioner entered guilty pleas and was convicted in the three cases that had previously been the subject of Petitioner's successful post-conviction application. Response, Ex. 9. Thus, the Petitioner's contention of the admission of evidence of a "void" conviction with respect to his prior felony conviction in Case No. CRF-85-152 is without merit and contrary to the record. Although in his trial the prosecutor relied on the judgment and sentence entered in Case No. CRF-85-164 on July 12, 1985, rather than the judgment and sentence entered in the case on September 23, 1986, the judgment and sentence entered in this case on September 23, 1986, reflects that Petitioner was convicted of the same offense. Response, Ex. 6; Response, Ex. 9 (State's Exhibit No. 2).

Although the OCCA found that there was no variation between the judgments and sentences in the convictions entered against Petitioner in July 1985 and the subsequent judgments and sentences entered against Petitioner in September 1986 following remand after the granting of post-conviction relief in those cases, there is a variation between the judgment and sentence entered in July 1985 and the judgment and sentence entered in September 1986 in Case No. CRF-84-152. The judgment and sentence entered in this case in July 1985 reflects that Petitioner entered a nolo contendere plea to felony charges of unlawful delivery

of controlled drug after former conviction of a felony and weapon use in commission of crime after former conviction of a felony.  Response, Ex. 9. After Petitioner was granted post-conviction relief in this case,  Petitioner entered a guilty plea on September 23, 1986, in this case to felony charges of unlawful delivery of controlled drug after former conviction of a felony and felonious possession of a firearm.  Response, Ex. 6.  Thus, both of Petitioner's convictions were for firearm-related offenses, although the September 1986 conviction was for felonious possession of a firearm and the earlier, vacated conviction was for using a weapon in the commission of a felony after a prior felony conviction.

In Oklahoma, "a defendant in a criminal case can only be convicted by evidence which proves he is guilty of that offense alone and evidence of other crimes is generally not admissible." Coats v. State, 589 P.2d 689, 691 (Okla. Crim. App. 1978).  However, "a defendant who testifies and admits guilt of prior convictions removes that question of fact from the jury." Dodd v. State, 982 P.2d 1086, 1087 (Okla. Crim. App. 1999).  "[A] defendant who takes the stand is subject to impeachment by prior convictions just like any other witness" and, under these circumstances, "there is no need for a separate determination of guilt" in a bifurcated proceeding. Id., at 1087-1088.  The Supreme Court approved the constitutionality of this procedural rule in Spencer v. Texas, 385 U.S. 554, 564-565 (1967)(holding two-stage jury trial is not constitutionally required "whenever a State seeks to invoke a habitual-offender statute").  "Under Oklahoma law, a certified copy of a judgment and sentence constitutes prima facie evidence of a prior conviction for enhancement purposes....The burden then shifts to the defendant to produce evidence to rebut the prima facie case, while the state retains the

ultimate burden of persuasion on proving the prior conviction." Mansfield v. Champion, 992 F.2d 1098, 1105 (10th Cir. 1993)(citations omitted).  This shifting burden of production is similar to the Kentucky state court procedure found to be consistent with due process in Parke v. Raley, 506 U.S. 20, 33-34 (1992). Although Petitioner's testimony at trial reflects he vaguely asserted he had received post-conviction relief and that the state court "modified" the sentences "on the same charges," TR vol. III, at 69-70, Petitioner provided no documentary evidence to rebut the evidence admitted at his trial to prove his multiple prior convictions. This evidence showed that Petitioner had eight prior felony convictions.

In his post-conviction appeal, the OCCA found Petitioner had not shown that any prejudicial error occurred at his trial as a result of the admission of documentary evidence to prove his prior felony convictions.  Because Petitioner's sentence could be predicated upon any two of his eight prior felony convictions, his trial was not rendered fundamentally unfair by the impeachment of Petitioner and the admission into evidence of judgments and sentences, including one judgment and sentence that contained evidence of a conviction that was invalidated and later modified upon a plea of guilty to a conviction for a different firearm-related offense, as prima facie evidence of his prior felony convictions.  The OCCA's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court jurisprudence, and Petitioner has not shown that the OCCA's determination was based on an unreasonable determination of the facts in light of the evidence presented at his trial.

Moreover, even though the OCCA did not expressly consider Petitioner's related claims of ineffective assistance of trial and appellate counsel based on counsels' failure to

27

investigate and raise an issue concerning the validity of the documentary evidence of Petitioner's prior convictions admitted at his trial, the OCCA's decision implicitly rejects these contentions by finding that Petitioner showed no prejudice as a result of the alleged errors by counsel.  In order to prevail on his ineffective assistance of counsel claims, the Petitioner must demonstrate both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)(quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). See Strickland v. Washington, 466 U.S. 688 (1984).  Even if Petitioner could show that either his defense counsel or his appellate counsel, or both, committed professionally unreasonable errors in not investigating or objecting to the admission of documentary evidence of Petitioner's prior felony convictions, Petitioner cannot show prejudice because only one of his eight prior felony convictions was modified after it was vacated and Petitioner had seven other prior felony convictions supporting the habitual offender sentence.  Accordingly, the OCCA's decision is not contrary to, or an unreasonable application of, the prevailing Strickland standard for evaluating Sixth Amendment claims of ineffective assistance of counsel.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by

November 28th , 2005, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this    4th    day of     November   , 2005.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE